FRANK D. UPCHURCH, Jr., Judge.
Appellant Rosa Newkirk, as the personal representative of the estates of Harold McKay, Sr. and Alma Newkirk, has appealed from a final summary judgment denying recovery on a joint life insurance policy applied for by McKay and Newkirk just prior to their deaths. Appellant contends that the decedents had made a payment on the policy and hence the policy went into effect on the date of application. We agree with appellant’s contention and reverse the summary judgment.
On November 10,19.77, Curtis Jaggers, an agent for appellee Southern Life, took an application for an insurance policy covering McKay and Newkirk. An application for a separate policy for their son was also made. McKay and Newkirk were told that the standard monthly premium for persons of their age was $17.83. No money exchanged hands at this time and the applications were marked C.O.D.
On November 23, 1977, Jaggers visited McKay and Newkirk and told them that their son’s policy could not be issued C.O.D. because of the small monthly premium. McKay and Newkirk gave Jaggers the sum of $10 and instructed him to pay the first monthly premium on their son’s policy and apply the remaining portion toward their policy. Jaggers issued McKay and Newkirk a receipt for the $10.
*392 Several days later, Southern reviewed the application and determined that the standard rate would not apply because of the applicants’ obesity. Southern assessed the parties an additional premium and printed a policy in their names. The policy was mailed to Jaggers, who upon visiting the home of McKay and Newkirk, was advised of their deaths on the preceding day.
The application in question contained the following language:
I HEREBY DECLARE that all the statements and answers to the above questions, those on the reverse side, and to the questions of any medical examination required are complete and true and I AGREE (1) that they, together with this agreement, shall form the basis and be a part of any policy issued hereunder; (2) that except as otherwise provided in the Company’s receipt for %C.O.D. (hand written) tendered with this application, the insurance herein applied for shall not take effect until a policy therefor is delivered to me and the first premium paid while each person proposed for insurance is in good health.. . . (emphasis added)
Appellant concedes that the application indicates that the policy does not take effect until delivery and payment of the first premium by the applicant while in good health. See Gulf Life Ins. Co. v. Ellis, 145 Fla. 262, 198 So. 836 (1940). Appellant, however, contends that the conditions of coverage were altered by the receipt given by Jaggers on November 23, 1977. This receipt provided as follows:
If this is a receipt for a payment made with an application for a policy of insurance, the insurance applied for shall go into effect, in accordance with the terms and provisions of the policy (except that the maximum amount payable under such insurance shall be $20,000) on the date of the completed application if each person proposed for insurance was in sound health on such date, and shall continue in force until the expiration of the period covered by the payments receipted for herein unless the Company has declined to issue the insurance applied for, in which event the amount paid will be returned to the applicant, (emphasis added)
 For the receipt to alter the coverage of the policy, several conditions must be met under the provisions of this receipt:
1) the insurance company must not have declined to issue the insurance policy;
2) the applicant must have been in sound health on the date of the completed application;
3) the receipt must have been for a payment made with an application for an insurance policy.
As to the first condition, there is no evidence that Southern refused or declined to issue the policy. It was obvious that the company was willing to insure the applicants at an additional premium. Regarding the second condition, Southern’s argument that the applicants obviously were not in good health because of their obesity lacks merit. It is clear that their health was acceptable at the additional premium and the policy was prepared with an awareness of that condition.[1]
The third condition involved a “payment made with an application for a policy of insurance. . . . ” The term “payment” is not defined in the policy or receipt. Southern argues that the term should be construed here as meaning the first monthly premium in its entirety. In contrast, appellant urges this court to use its plain meaning, that is, a payment is any amount of money required or accepted by Southern. It is well-established that insurance contracts are construed against the drafter in the face of any ambiguities. Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So.2d 938 (Fla.1979). We therefore interpret the word “payment” as used in the receipt here against the insurance company and hold that it means any amount for which the receipt was given.
*393 We recognize that insurance companies are not required to accept partial payments of fixed premiums. Hilson v. Sun Life Assur. Co. of Canada, 132 F.2d 989 (5th Cir. 1943). However, if Southern did not want to process the application until the full premium had been paid, it could simply have returned the application until the requisite amount had been tendered. Or, Southern could have provided language in its receipt to the effect that no coverage under the policy would commence until delivery of the policy and receipt of the first month’s premium in full.
REVERSED and REMANDED for further proceedings consistent with this opinion.
COBB and COWART, JJ., concur.

. We might find merit in Southern’s argument had the parties’ deaths resulted from their condition. Here, however, the parties died from carbon monoxide poisoning.